ROGERS, Justice.
The Empire Mills Company, doing business under the name of the Empire Brick Company, is a corporation organized under the laws of Georgia with its principal office in the City of Columbus.
The J. A. Jones Construction Company, Incorporated, is a corporation organized under the laws of North Carolina with its principal place of business in the City of Charlotte.
The Southern Fireproofing Company is a copartnership composed of Jacob A. *183 Lichter and Jennie L. Lichter, with its principal office in the City of Cincinnati, Ohio.
In the month of February, 1940, the J. A. Jones Construction Company, Incorporated, entered into a contract with the Housing Authority of New Orleans for the construction of the Iberville Housing Project No. 1-3 in the City of New Orleans. The Jones Construction Company sublet the brick work for the project to the Southern Fireproofing Company and that company, in the month of May, 1940, placed an order with the Empire Brick Company for an estimated 3,000,000 “All-Hard Common Brick for facing purposes” at the price stipulated in the contract. During the months of May, June, July and August, 1940, the Empire Brick Company delivered at New Orleans to the Southern Fireproofing Company 1,700,000 brick for which it received payment. During the months of September and October, 1940, the Empire Brick Company delivered at New Orleans to the Southern Fireproofing Company an additional 1,300,000 brick which were used in the project. In the early part of October, 1940, the Southern Fireproofing Company mailed to the Empire Brick Company its check in payment of the brick delivered in the month of September, but before the Brick Company was able to cash the check the Southern Fireproofing Company stopped payment thereof. The Southern Fireproofing Company took this action because the Empire Brick Company refused to deliver, under their contract, the additional brick required by the Southern Fireproofing Company to complete the project. The Brick Company took the position that by delivering 3,000,000 brick it had fulfilled its-contractual obligation. The additional brick, amounting to 670,000, were subsequently furnished by the Empire Brick Company to the J. A. Jones Construction. Company, Incorporated, the principal contractor, at the increased market price. The Jones Construction Company turned the brick over to the Southern Fireproofing Company, which used and paid for the brick.
The Southern Fireproofing Company,, persisting in its refusal to pay for the 1,-300,000 brick delivered to the company during the months of September and October, the Empire Brick Company recorded' its. claim in the office of the Recorder of Mortgages for the Parish of Orleans and made demand in writing for the payment of the claim on the Jones Construction Company and its sureties on the contractor’s, bond. This suit followed. The defendants are the J. A. Jones Construction Company, Incorporated, the general contractor, its. sureties, and the Southern Fireproofing Company, sub-contractor.
The plaintiff, the Empire Brick Company, prayed for judgment against the defendants for the sum of $10,400 representing the balance due for the 3,000,000 brick shipped to the Southern Fireproofing Company and used in the Iberville Housing Project in the City of New Orleans, together with interest, attorney’s fees and costs.
The defendants filed a joint answer in which they denied the material allegations of plaintiff’s petition. They specially averred that the plaintiff had violated its agree *185 ment with the Southern Fireproofing Company by failing to timely deliver the quantity and kind of brick required by its contract. Defendants incorporated in their answer a reconventional demand claiming damages in the sum of $24,957, for which they prayed for judgment subject to a credit in favor of the plaintiff of $10,075, which they admit is due plaintiff.
After hearing the parties, the Court below rendered judgment in favor of plaintiff as prayed for and dismissed the reconventional demand. The defendants are appealing from the judgment.
The contract between the Southern Fireproofing Company and the Empire Brick Company is embodied in a series of letters interchanged by the parties. Defendants concede that the contract called for the delivery of only 3,000,000 brick although 3,-670,000 brick were used to complete the project. Defendants’ complaint is that the additional 670,000 brick were required because of plaintiff’s failure “to ship brick according to the sample, which necessitated the culling of the brick and the use of the culled brick for backing-up and for chimneys.” Plaintiff refused to furnish the additional brick, contending that it had fulfilled its contractual obligation when it delivered the 3,000,000 brick to the Southern Fireproofing Company. Later plaintiff furnished the additional 670,000 brick to the J. A. Jones Construction Company, the principal contractor. The Jones Construction Company turned the brick over to the Southern Fireproofing Company which used the brick to complete the work.
The record discloses that the-Southern Fireproofing Company purchased from the Empire Brick Company the cheapest brick manufactured by the brick company. The brick was known as an “All-Hard Common Brick” and was sold according to sample. The contract between the Southern Fireproofing Company and the Empire Brick Company stipulated that the brick was sold “net f. o. b. Plant at Ceramic, Ala.,” and hence, delivery to-the carrier at that point was delivery to-the purchaser of the brick.
On' receipt of the first car of brick the-Southern Fireproofing Company wrote the Empire Brick Company complaining that a number of the brick were chipped, and suggested that in the future the brick should be packed in straw. Upon receipt of this complaint the Brick Company advised the Southern Fireproofing Company that the shipment was made strictly in accordance with the samples and according to contract. Without further objection as. to its quality, the Southern Fireproofing Company began ordering the brick and paying for it in full as it was billed month by month.
The testimony shows that the brick were handled at the plant of the Empire Brick Company by men wearing rubber gloves,, taking two bricks at a time in each hand. The brick were loaded and packed in straw on freight cars, 20,000 brick to each car. They were transported 500 miles over two-railroads including a switching movement in the City of Birmingham, Alabama. The testimony further shows that brick will inevitably chip when transported by rail *187 road, particularly where the distance the brick is transported is as great as the distance was in this case.
The defendants’ witnesses testified .that upon the arrival of the cars in New Orleans the brick were rapidly unloaded eight at a time by the use of iron tongs. They were then placed in wheelbarrows, transferred from the wheelbarrows to trucks, stacked in piles on the sides of the street, moved from these stacks into wheelbarrows again, and then placed in smaller stacks so that they could be easily handled by the bricklayers. The testimony in the record ¿hows that in handling bride in this manner chipping is bound to occur.
George Earhart, the chief brick inspector for the Southern Fireproofing Company, testified that no more culling of brick was required on this job than on any other job of a similar nature. And there is nothing in the record to show that the chipping which rendered the culling necessary was not caused by the handling of the brick after they were delivered by the Empire Brick Company to the railroad company at Ceramic, Alabama.
All the brick were accepted and used by the Southern Fireproofing Company after they had been inspected by its representatives at New Orleans. The Southern Fireproofing Company paid for 1,700,000 brick, without claiming any damages for defective brick. The Southern Fireproofing Company also mailed to the Empire Brick Company its check in payment of 1,000,000 brick delivered in September, 1940, without suggesting that damages were due it for any cause whatever. The Southern Fireproofing Company stopped payment on this check solely because of the statement contained in a letter of the Empire Brick Company which was received by the Southern Fireproofing Company while its check was in the mails, that after certain additional shipments were made the brick company would “owe” the Fireproofing Company “240,000 brick or twelve more cars.”
After the delivery of 3,000,000 brick to the Southern Fireproofing Company, the Empire Mills Company sold 670,000 brick to the Jones Construction Company, which brick were used and paid for in full by the Southern Fireproofing Company without complaint. These brick were identical in quality with the 3,000,000 previously delivered and were manufactured and handled in the same way.
There is no substance in defendants’ complaint that the Empire Brick Company did not deliver the brick in the time required by the contract. Defendants have not pointed out what the contract called for in that respect. The obligation of the Southern Fireproofing Company under its subcontract with the Jones Construction Company was to furnish the materials and perform the work properly so as not to delay progress or completion of the buildings in any particular No complaint was made by the Jones Construction Company that the Southern Fireproofing Company failed to discharge its obligation which, obviously, it could not have done if the Empire Brick Company had failed to promptly deliver the brick. The record shows that the brick work on the entire project was com- • pleted on- January 22, 1941, which was well *189 ■within the period of 500 consecutive calendar days allowed for the completion of the project in the contract awarded on February 9, 1940, by the Housing Commission of New Orleans to the Jones Construction Company, Incorporated. The work of the Southern Fireproofing Company calling for the payment of $490,000 as stipulated in its contract was approved without any deductions /or delays or defects in the work.
We find no merit in defendants’ complaint that a substantial amount of the brick were not of the size called for by the contract. The contract provides that the “brick shall conform to samples submitted by you (Empire Brick Company) and approved for this project.” The testimony satisfies us that the bulk of the brick furnished was strictly in accordance with the samples. In a few letters written by the Southern Fireproofing Company, a reference was made to the fact that some of the brick were running short in size. The Empire Brick Company immediately replied to these letters and denied the statements contained therein. In its letter the Brick Company advised the Southern Fireproofing Company that the brick were measured at its plant where it was found that they fulfilled the government specifications. The letter concluded with an invitation to the Southern Fireproofing Company to visit the plant of the Brick Company and to inspect the brick before they were shipped. Apparently this invitation was not accepted and thereafter no question concerning the size of the brick was raised until the institution of this suit. On August 22, 1940, the Southern Fireproofing Company wrote the Empire Brick Company expressing appreciation for the cooperation afforded by the Brick Company. On September 30, 1940, after 2,700,000 brick had been shipped, the Southern Fireproofing Company wrote the Empire Brick Company in which the writer said, among other things, “I think you, have been very cooperative up to the present time in the shipments you have made us, particularly in view of the fact that the situation has changed radically since this job was initiated.” It is apparent that until the Empire Brick Company advised the Southern Fireproofing Company on October 14, 1940, that after the further shipment of 240,000 brick its contract to deliver 3,000,000 brick would be completed, the Southern Fireproofing Company had never seriously considered making any cláim for damages for any alleged defects in the brick or for any alleged failure of the Empire Brick Company to deliver them on time.
The claim of the Southern Fireproofing Company for damages is made up of a number of miscellaneous items, such as $629 for overhead expenses incurred during an alleged delay of seventeen days in the shipment of brick; $125.63 for social security taxes; $820 “for loss of efficiency due to having to lay off* the ordinary bricklayers and using straw bosses as bricklayers, along with the key bricklayers,” etc.
After hearing all the evidence over plaintiff’s objections, the trial judge found that the claim of the Southern Fireproofing Company for damages was purely speculative and without merit. The finding was correct. If the Southern Fireproofing *191 Company were entitled to any damages at all, they would have accrued only after the Empire Brick Company had refused to deliver more than 3,000,000 hrick and the measure of damages would be the difference between the contract price and the price the Southern Fireproofing Company was compelled to pay for the additional brick.
Since we have found that the claim of the Southern Fireproofing Company for damages is not meritorious and that on the other issues involved in the case the evidence sustains the plaintiff’s demand, the trial judge did not err in rendering judgment in favor of the plaintiff for the full amount alleged to be due. We say this notwithstanding defendants’ contention that the judgment is based,j on a price of '$8 per thousand for brick delivered instead of $7.75 per thousand as provided by the contract of the parties. The contract, however, called for the payment of $8 per thousand for brick shipped and delivered, with a 25% discount if the payments for the brick were made prior to the 15th of the following month. In other words, under the terms of the contract, it was agreed that the price of the brick would be $7.75 per thousand if the -brick were paid for previous to the 15th of the month following the date of shipment, otherwise the price of the brick would be $8 per thousand. That this arrangement was clearly understood by the representative of the Southern Fireproofing Company is shown by the voucher attached to the Southern Fireproofing Company’s check dated August 13, 1940, sent to the Empire Brick Company in payment of its statement rendered on July 21, 1940, covering the first shipment of the brick. Thereafter shipments made each month were paid for prior to the 15th of the following month in accordance with: the arrangement calling for 25% discount. Apparently this question was not raised pri- or to the institution of the present suit.
Attorney’s fees were awarded plaintiff under the provisions of Act No. 224 of 1918, as amended by Act No. 271 of 1926.
The parties have cited a number of cases reflecting the jurisprudence of Georgia, Alabama and Louisiana relative to the construction of and damages for the violation of contracts. We find it unnecessary to comment upon those cases, since whatever jurisprudence is applied, the conclusion we have reached would be the same on the facts exhibited by the record.
For the reasons assigned, the judgment appealed from is affirmed.